GREENSPOON MARDER LLP
Kelly M. Purcaro, Esq.
Kory Ann Ferro, Esq.
One Gateway Center, Suite 2600
Newark, New Jersey 07102
Tel.: (732) 456-8734 or 8746
Kelly.Purcaro@gmlaw.com
KoryAnn.Ferro@gmlaw.com
*Attorneys for Defendant The Alesco Group, L.L.C.*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, as assignee of individuals who are Covered Persons, JANE DOE-1, a law enforcement officer, JANE DOE-2, a law enforcement officer, EDWIN MALDONADO, SCOTT MALONEY, JUSTYNA MALONEY, PATRICK COLLIGAN, PETER ANDREYEV, and WILLIAM SULLIVAN, | Case No.: 1:24-cv-05656-HB |
| | Civil Action |
| *Plaintiff,* | |
| v. | **ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIMS, AND DEMAND FOR JURY TRIAL** |
| THE ALESCO GROUP, L.L.C., ALESCO AI, LLC, ALESCO MARKETING SOLUTIONS, L.L.C., STAT RESOURCE GROUP INC., RESPONSE SOLUTIONS GROUP, LLC, RICHARD ROES 1-10, fictitious names of unknown individuals and ABC COMPANIES 1-10, fictitious names of unknown entities, | |
| *Defendants.* | |

1

Defendant The Alesco Group, L.L.C. (improperly pled as Alesco AI, Alesco Marketing Solutions, Stat Resource Group Inc., and Response Solutions Group, LLC) ("Alesco"), by and through its undersigned counsel, hereby timely responds to the Complaint filed by Plaintiffs, Atlas Data Privacy Corporation, *as assignee of individuals who are Covered Persons*, Jane Doe-1, *a law enforcement officer*, Jane Doe-2, *a law enforcement officer*, Scott Maloney, Justyna Maloney, and William Sullivan ("Plaintiffs"). The headings and Paragraph numbers below correspond to the Paragraphs contained in the Complaint.

## **INTRODUCTION**

1.    Alesco denies that it is one of the alleged "uncooperative profit-seeking data brokers" as described in Paragraph 1 of the Complaint. Alesco is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 1 of the Complaint and accordingly denies the allegations.

2.    Alesco denies that it is one of the alleged companies that "choos[es] profit and personal gain over a critical public interest and the unequivocal mandate of the law" or that operates "without sufficient regard for the risks and consequences imposed upon individuals who serve critical judicial and law enforcement roles" as described in Paragraph 2 of the Complaint.  Alesco is without knowledge or

information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 2 of the Complaint and accordingly denies the allegations.

3.     Alesco denies that it "wantonly and repeatedly disregard[s] the law" or "demonstrate[s] a callousness towards the well-being of those who serve" as described in Paragraph 3 of the Complaint.  Alesco is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 3 of the Complaint and accordingly denies the allegations.

4.     Alesco admits that Plaintiffs filed this action. Alesco is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 4 of the Complaint and accordingly denies the allegations.

## BACKGROUND

### Passage of Daniel's Law in New Jersey

5.     Alesco admits the allegations contained in Paragraph 5 of the Complaint.

6.     Alesco admits the allegations contained in Paragraph 6 of the Complaint.

7.     Alesco denies that it provides "the same kind of data broker services" as described in Paragraph 7 of the Complaint.

**New Jersey Passes Daniel's Law in 2020**

8.      Alesco admits that Daniel's Law is codified in *N.J.S.A.* 47:1a-1, *et seq.* and *N.J.S.A.* 56:9-166.1 and such statute speaks for itself and is the best evidence of its contents.

9.      Alesco admits that Daniel's Law is codified in *N.J.S.A.* 47:1a-1, *et seq.* and *N.J.S.A.* 56:9-166.1 and such statute speaks for itself and is the best evidence of its contents.  Alesco denies the remaining allegations contained in Paragraph 9 of the Complaint to the extent they incorrectly state a conclusion of law.

**Congress Passes Daniel Anderl Judicial Security and Privacy Act in 2022**

10.     Alesco is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 10 of the Complaint.

11.     Alesco is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 11 of the Complaint.

12.     Alesco is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 12 of the Complaint.

**Violence Against Police Officers and Judges Has Not Stopped**

13.     Alesco is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 13 of the Complaint.

4

14. Alesco is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 14 of the Complaint.

## THE PARTIES

### The Individual Plaintiffs

15. Alesco is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 15 of the Complaint and accordingly leaves Plaintiffs to their proofs.

16. Alesco is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 16 of the Complaint and accordingly leaves Plaintiffs to their proofs.

17. Alesco is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 17 of the Complaint and accordingly leaves Plaintiffs to their proofs.

18. Alesco is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 18 of the Complaint and accordingly leaves Plaintiffs to their proofs.

19. Alesco is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 19 of the Complaint and accordingly leaves Plaintiffs to their proofs.

20.    Alesco is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 20 of the Complaint and accordingly leaves Plaintiffs to their proofs.

21.    Alesco is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 21 of the Complaint and accordingly leaves Plaintiffs to their proofs.

**Plaintiff Atlas and its Assignors**

22.    Alesco is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 22 of the Complaint and accordingly leaves Plaintiffs to their proofs.

23.    Alesco is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 23 of the Complaint and accordingly denies the allegations.

24.    Alesco is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 24 of the Complaint and accordingly denies the allegations.

25.    Alesco denies receipt of the "written notice(s)" described in Paragraph 25 of the Complaint. Alesco is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 25 of the Complaint and accordingly denies the allegations.

26.    Alesco denies the allegations contained in Paragraph 26 of the Complaint.

27.    Alesco is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 27 of the Complaint and accordingly denies the allegations.

28.    Alesco is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 28 of the Complaint and accordingly denies the allegations.

29.    Alesco is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 29 of the Complaint and accordingly denies the allegations.

30.    Alesco is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 30 of the Complaint and accordingly denies the allegations.

31.    Alesco is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 31 of the Complaint and accordingly denies the allegations.

32.    Alesco is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 32 of the Complaint and accordingly denies the allegations.

33.    Alesco is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 33 of the Complaint and accordingly denies the allegations.

**Defendants**

34.    Alesco denies the allegations contained in Paragraph 34 of the Complaint.

35.    Alesco denies the allegations contained in Paragraph 35 of the Complaint.

36.    Alesco denies the allegations contained in Paragraph 36 of the Complaint.

37.    Alesco denies the allegations contained in Paragraph 37 of the Complaint.

38.    Alesco denies the allegations contained in Paragraph 38 of the Complaint.

39.    Alesco is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 39 of the Complaint as it references unidentified "Richard Roe" individuals and "ABC Companies."  To the extent Paragraph 39 contends that employees of Alesco were engaged in any wrongdoing, Alesco denies same.

40.    Alesco engages in business-to-business data solutions, marketing, and privacy. Alesco does so, in part, through alesco.com, alescodata.com, and statlistics.com. Alesco denies the remaining allegations contained in Paragraph 40 of the Complaint and accordingly leaves Plaintiffs to their proofs.

41.    Alesco denies the allegations contained in Paragraph 41 of the Complaint.

42.    Alesco denies that the characterizations of services alleged in Paragraph 42 of the Complaint apply to Alesco and further denies that Alesco "disclose[s]" information "without sufficient regard to the risks and consequences imposed on individuals."

## JURISDICTION AND VENUE

43.    Paragraph 43 of the Complaint constitutes legal conclusions, statements, and characterizations to which no response is required. To the extent a response is required, Alesco denies that state court, where the Complaint was filed, had jurisdiction, which is why the matter was properly removed to federal court.

44.    Paragraph 44 of the Complaint constitutes legal conclusions, statements, and characterizations to which no response is required. To the extent a response is required, Alesco denies the allegations in Paragraph 44 of the Complaint as venue in Monmouth County was not proper resulting in the removal of this matter from state court to federal court.

## FACTS COMMON TO ALL COUNTS

45.    Paragraph 45 of the Complaint constitutes legal conclusions, statements, and characterizations to which no response is required.  To the extent a response is required, Alesco admits that Daniel's Law is codified in *N.J.S.A.* 47:1a-1, *et seq.* and *N.J.S.A.* 56:9-166.1.

46.    Paragraph 46 of the Complaint constitutes legal conclusions, statements, and characterizations to which no response is required.  To the extent a response is required, Alesco denies the allegations contained in Paragraph 46 of the Complaint to the extent they incorrectly state a conclusion of law.

47.    Paragraph 47 of the Complaint constitutes legal conclusions, statements, and characterizations to which no response is required.  To the extent a response is required, Alesco denies the allegations contained in Paragraph 47 of the Complaint to the extent they incorrectly state a conclusion of law.

48.    Paragraph 48 of the Complaint constitutes legal conclusions, statements, and characterizations to which no response is required.  To the extent a response is required, Alesco denies the allegations contained in Paragraph 48 of the Complaint to the extent they incorrectly state a conclusion of law.

49.    Paragraph 49 of the Complaint constitutes legal conclusions, statements, and characterizations to which no response is required. To the extent a

response is required, Alesco denies the allegations contained in Paragraph 49 of the Complaint to the extent they incorrectly state a conclusion of law

50.     Paragraph 50 of the Complaint constitutes legal conclusions, statements, and characterizations to which no response is required. To the extent a response is required, Alesco denies the allegations contained in Paragraph 50 of the Complaint to the extent they incorrectly state a conclusion of law

51.     Paragraph 51 of the Complaint constitutes legal conclusions, statements, and characterizations to which no response is required.  To the extent a response is required, Alesco denies the allegations contained in Paragraph 51 of the Complaint to the extent they incorrectly state a conclusion of law.

52.     Alesco denies the allegations contained in Paragraph 52 of the Complaint.

53.     Alesco is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 53 of the Complaint and accordingly denies the allegations.

54.     Alesco denies the allegations contained in Paragraph 54 of the Complaint.

55.     Alesco denies the allegations contained in Paragraph 55 of the Complaint.

56.    Alesco is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 56 of the Complaint and accordingly denies the allegations.

57.    Alesco denies the allegations contained in Paragraph 57 of the Complaint.

## COUNT ONE
### (Daniel's Law)

58.    Alesco repeats, realleges, and incorporates by reference each of the preceding paragraphs of this Answer as if fully set forth herein.

59.    Alesco denies the allegations contained in Paragraph 59 of the Complaint.

60.    Paragraph 60 of the Complaint constitutes legal conclusions, statements, and characterizations to which no response is required.  To the extent a response is required, Alesco denies the allegations contained in Paragraph 60 of the Complaint to the extent they incorrectly state a conclusion of law.

61.    Alesco denies the allegations contained in Paragraph 61 of the Complaint.

62.    Alesco denies the allegations contained in Paragraph 62 of the Complaint.

63.    Alesco denies the allegations contained in Paragraph 63 of the Complaint.

64.    Alesco denies the allegations contained in Paragraph 64 of the Complaint.

**WHEREFORE**, Alesco demands judgment against Plaintiffs dismissing their Complaint with prejudice, awarding Alesco attorneys' fees and costs and granting such other and further relief as the Court deems just and proper.

As to any part of the Complaint not specifically admitted, denied, or discussed with respect to Alesco, Alesco hereby denies said allegations, including, but not limited to, any allegations contained in the Complaint's preamble, headings, subheadings, and wherefore clauses.  Furthermore, any averments in the Complaint to which no responsive pleadings are capable or required shall be deemed denied.

## AFFIRMATIVE DEFENSES

Without assuming the burden of proof where it otherwise rests with Plaintiffs, Alesco pleads the following affirmative defenses to Plaintiffs' Complaint:

## FIRST AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, for failure to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the applicable Statute of Limitations.

## THIRD AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, or are limited because Plaintiffs lack standing to bring this action as Plaintiffs have not suffered the requisite harm required to confer standing under Article III of the United States Constitution.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, or are limited because Plaintiffs' lack standing to bring the claims by way of assignment and/or as noncovered persons.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, or are limited because any alleged wrongdoing by Alesco, which Alesco denies, was caused by mistake. Indeed, Alesco acted reasonably and in good faith at all material times based on all relevant facts and circumstances known by it at the time it acted.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, or are limited by the doctrine of estoppel.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, or are limited by the doctrine of waiver.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, or are limited because the subject alleged speech constitute commercial speech protected by the First Amendment of the United States Constitution and the imposition of liability for such protected speech violates the First Amendment rights of the speaker.

## NINTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, or are limited by the doctrine of unclean hands.

## TENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, or are limited because Plaintiffs failed to mitigate their damages. While Alesco does not concede that it has violated Daniel's Law or that Plaintiffs sustained damages, recovery (if any) should be reduced in proportion to Plaintiffs' failure to mitigate such damages.

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, or are limited because Plaintiffs seek impermissible liquidated damages.

## TWELFTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, or are limited because the alleged requests were sent for an improper purpose, and in an effort to manufacture

and pursue litigation on a massive group action basis, not to seek compensation for damages suffered, as contemplated by statute.

## THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, or are limited by the doctrine of unjust enrichment.

## FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, or are limited because the alleged damages Plaintiffs seek were caused in whole or in part by the acts or omissions or intervening and superseding acts of negligence or intentional conduct on the part of persons or entities over whom Alesco has neither control nor right of control and for whose actions Alesco is not liable.

## FIFTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, or are limited because the statutory damages provisions of the law are excessive fines and/or are grossly disproportionate to any actual harm that may have been suffered. Accordingly, such statutory damages provisions violate the United States Constitution.

## SIXTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, or are limited by the Communications Decency Act.  *See* 47 U.S.C. § 230 *et seq.*

## SEVENTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, or are limited as violative of the United States Constitution as applied to Alesco.

## EIGHTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims for injunctive relief fail or otherwise are barred, in whole or in part, or are limited because there is neither continuing harm nor immediate danger.

## NINETEENTH AFIRMATIVE DEFENSE

Alesco did not owe a duty to Plaintiffs.

## TWENTIETH AFFIRMATIVE DEFENSE

Alesco did not breach any legal duty owed to Plaintiffs.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

Alesco was not the actual or proximate cause of the damages claimed by Plaintiffs.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

The claims against Alesco are barred by the doctrines of comparative and/or contributory negligence.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

Public policy prohibits recovery by Plaintiffs against Alesco.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

Plaintiffs' allegations are barred by the common law doctrine of impossibility of performance.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, or are limited because Atlas failed to provide full and complete information to their users regarding Alesco and its services during the opt-out and/or assignment process resulting in improper opt-out requests based on misinformation and incomplete information and/or invalid assignments.

## TWENTY-SIXTH AFFIRMATIVE DEFENSE

Plaintiffs' claims of punitive damages fail or otherwise are barred, in whole or in part, or are limited because Alesco did not engage in any acts or omissions actuated by actual malice or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions. In addition, the award of such damages would violate Alesco's rights under the Constitutions of the State of New Jersey and the United States of America.

## TWENTY-SEVENTY AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, or are limited by the doctrine of laches.

## RESERVATION OF RIGHTS

Alesco reserves the right to amend or add to its affirmative defenses upon discovery of additional information or evidence or as justice so requires.

**WHEREFORE**, Alesco demands judgment against Plaintiffs dismissing their Complaint with prejudice, awarding Alesco attorneys' fees and costs and granting such other and further relief as the Court deems just and proper.

## COUNTERCLAIMS

Defendant/Counterclaimant The Alesco Group, L.L.C. (improperly pled as Alesco AI, Alesco Marketing Solutions, Stat Resource Group Inc., and Response Solutions Group, LLC) ("Alesco"), by and through its undersigned counsel, hereby complains by way of Counterclaim against Plaintiffs/Counterclaim-Defendants, Atlas Data Privacy Corporation, *as assignee of individuals who are Covered Persons*, Jane Doe-1, *a law enforcement officer*, Jane Doe-2, *a law enforcement officer*, Scott Maloney, Justyna Maloney, and William Sullivan ("Plaintiffs"), as follows:

## PARTIES

1.      Defendant/Counterclaimant Alesco is a Florida business-to-business data solutions, marketing, and privacy company.  Alesco's headquarters are located at 4575 Via Royale, Suite 110, Fort Myers, Florida 33919.  Alesco provides services

via interstate computer services and does not have any offices or locations within the State of New Jersey.

2.     Upon information and belief, Plaintiff Atlas Data Privacy Corporation ("Atlas") is a Delaware corporation organized under the laws of the State of Delaware with its offices located at 201 Montgomery Street, Suite 263, Jersey City, New Jersey.

3.     Upon information and belief, Jane Doe-1, *a law enforcement officer*, is or was a police officer working in Northern New Jersey.

4.     Upon information and belief, Jane Doe-2, *a law enforcement officer*, is or was a correctional police officer who lives in Northern New Jersey.

5.     Upon information and belief, Scott Maloney is or was a police officer in the Rahway, New Jersey Police Department.

6.     Upon information and belief,  Justyna Maloney is or was a police officer in the Rahway, New Jersey Police Department.

7.     Upon information and belief, William Sullivan is or was a correctional police officer with the New Jersey Department of Corrections.

## JURISDICTION AND VENUE

8.     Jurisdiction of this Court is based upon diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(1), as Alesco is a citizen of a state different from Plaintiffs and the amount in controversy exceeds $75,000, exclusive of interest and costs.

9.    Venue is proper in this judicial district pursuant to the assignment of this case to this Court.

## FACTUAL BACKGROUND

10.    Atlas leveraged the amendments to Daniel's Law to improperly create a cottage industry for itself, whereby it designed a process upon which it could recruit "covered persons," sabotage hundreds of businesses, and profit off the legal claims of those very "covered persons" at the expenses of unsuspecting companies.

11.    Atlas sought out and signed up thousands of alleged covered persons (the "Assignors"), asked that they assign their legal rights to Atlas, provided the Assignors with a preset list of target companies, and created "nondisclosure requests" on behalf of the Assignors.

12.    The "nondisclosure requests" created by Atlas were generic, autogenerated emails completely devoid of the individual information of the Assignors, which would be needed to, among other things, confirm that the tens of thousands of requests were *bona fide* requests, made on behalf of actual Covered Persons as defined by Daniel's Law, or even authorized by the Assignors, or if the information provided was in fact "the home address or unpublished home telephone number" of any actual Covered Person (herein "Protected Information").

13.    Indeed, the requests were created and sent by Atlas, and not by the Assignors, as required by Daniel's Law.

21

14.    Atlas collected Assignors for about six months until it reached nearly 20,000 – all the while withholding such Assignors purported nondisclosure requests until Atlas acquired its critical mass needed to launch its attack.

15.    To be sure, if Atlas were truly concerned about the safety of the Assignors, they would have generated opt-out requests immediately upon an Assignor signing up for services, not months later.

16.    Atlas failed to verify that the Assignors qualified as Covered Persons under Daniel's Law.

17.    Atlas failed to verify that the targeted defendants, including Alesco, possessed or disclosed Protected Information of the Assignors.

18.    Atlas failed to advise the Assignors of Alesco's business, terms of use, privacy practices, or any other material facts about Alesco.

19.    Atlas misrepresented that Alesco was a "data broker" and that Alesco published "personal information on the web" or otherwise offered a "people search website."

20.    Once Atlas reached its critical mass of Assignors, according to Plaintiffs' Complaint and Atlas' subsequent productions, Atlas sent tens of thousands of emails nearly simultaneously, all from "@atlasmail.com" to "info@alescodata.com" rather than use Alesco's already preexisting opt-out platform.

21.    Alesco has a preexisting opt-out process, whereby opt out requests can and could have been easily processed through the available platform on Alesco's website (https://alescodata.com/opt-out-request/) regardless of an individual's Covered Person status.  As such, in launching its attack, Atlas actively ignored a pre-established, user friendly opt-out platform that would have immediately removed the Assignors' data regardless of the verification of their status as a Covered Person under Daniel's Law.

22.    The Complaint[1] alleges that "each of the Individual Plaintiffs and all of the Covered Persons (who assigned claims to Atlas)" sent nondisclosure request via email to Alesco from "AtlasMail" starting on or about January 19, 2024. Complaint at ¶ 52.

23.    Alesco denies that the individual plaintiffs and all of the Assignors sent nondisclosure requests.

24.    Alesco denies the receipt of all of the alleged nondisclosure requests.

25.    Alesco denies that the requests were valid, denies that the assignments were valid, and denies that the Assignors all qualify as Covered Persons under Daniel's Law.

---

[1] February 13, 2024, Plaintiffs filed the underlying complaint against Alesco in the New Jersey State Court, Law Division, Bergen County (State Dkt. BER-L-000969-24) (the "Complaint"). On April 26, 2024, Alesco filed a Notice of Removal of Plaintiffs' Complaint before this Court (Dkt. No. 1), which removal was unopposed and thereafter granted by this Court.

26.    Upon information and belief, Alesco's spam filters automatically blocked Atlas' spam attack as bulk emails from the same sender arriving simultaneously, as such an attack would trigger Alesco's anti-spam/virus protection protocols.

27.    It was not until Alesco was served with Plaintiffs' Complaint on April 24, 2025 that Alesco even became aware of any of the Atlas alleged nondisclosure requests.

28.    On April 18, 2024[2] and June 17, 2025 (Dkt. No. 51), the Court ordered Atlas to produce lists of the Assignors (herein a "List" or the "Lists").

29.    Having never before received or viewed the purported takedown requests, the Lists were the first time, after litigation had already commenced, that Alesco became aware of the details of the alleged takedown requests.

30.    Based upon the Lists, it is clear that Atlas sent its spam attack of tens of thousands of nearly identical emails from the same unknown handle to Alesco with the purpose and intention of frustrating the 10-day compliance period under Daniel's Law.

31.    The Lists show that Atlas, indeed, sent multiple separate emails on behalf of the same Assignors (e.g., one email for an address, one email for a phone

---

[2] This Order was not entered in Alesco's case as Alesco was not removed until after its entry, but Atlas nonetheless sent the ordered list subsequent to Alesco's removal.

number, one email for an alternate phone number) to generate an even higher volume of emails in its calculated cyber-attack against Alesco, in an effort to create multiple claims per Assignor and to further exacerbate the damage to Alesco's computer systems and business.  In some instances, upwards of five separate email requests were generated by Atlas for a single Assignor.

32.    To be sure, as Ordered by this Court, Plaintiffs first provided a List of some 49,106 alleged non-disclosure requests emails.

33.    Then in response to a second Order of this Court, Plaintiffs sent two additional Lists purporting to provide Alesco with "A 'Covered Persons list', which includes, for both individuals plaintiffs and the 'Covered Persons' (as defined in the Complaint), the dates the [alleged 49,098 on one list and 47,479 on the other] takedown notices were [supposedly] delivered to defendants and the 'category' of covered person into which each person fits."

34.    As demonstrated by the Lists, it appears that some 49,106 – 47,479 separate emails were sent – allegedly on behalf of about 19,000 Assignors. Many of these alleged requests are duplicates, list different addresses and different phone numbers for the same Assignor, and otherwise appear to have separate requests for information for the same Assignor.

35.    The Lists allege that Atlas sent these approximately 48,000 emails to Alesco in a calculated, nearly simultaneous, and massive fashion following the

2023-2024 New Years Holiday, *i.e.*, about 7,000 emails per day continuously from January 19-26, 2024.

36.    Atlas created and designed this computer-based attack upon Alesco, flooding Alesco system and servers with tens of thousands of emails, in an attempt to manufacture claims for the Assignors, and profit for Atlas.

37.    Atlas purposefully made the Lists unmanageable and difficult to work with as, for example, they were not searchable nor editable, listed numerous line items for each Assignor, and could not be easily imported into a compliance platform.  Same were sent to further frustrate compliance efforts.

38.    Alesco had to devote substantial time and resources, which are very limited given the size and nature of Alesco's business, to processing the takedown requests provided in Atlas' Lists.  As a result, Alesco's employees were diverted resulting in their inability to provide services to legitimate clients and business inquiries.

39.    Atlas could have, and should have, utilized Alesco's pre-existing opt-out platform, which would have automatically processed all takedown requests immediately.  Instead, Atlas chose to utilize a targeted spam attack, which Alesco never received, followed by the provision of an unwieldy and purposefully unhelpful Lists.  Thus making clear Atlas' intent to prevent compliance in an effort to manufacture claims.

26

40.    Alesco's computer-based technology, and its computers/systems, are used in interstate and foreign commerce and/or communications.

41.    In order to become a customer of Alesco and gain access to Alesco's services, data, and computer platform, all customers receive and are required to agree to the appropriate agreement: either the Master Services Agreement ("MSA") which is used for resellers of Alesco's data and make multiple purchases, or the Data Use Terms and Conditions Agreement ("DUTCA") which is sued for end users or one-time purchases. Further, business verification and payment is required in advance of accessing Alesco's data and/or services.

42.    In agreeing to either the MSA or DUTCA in advance of accessing Alesco's data and services, customers agree to Alesco's the terms and conditions contained within the respective agreements (the "Terms"), which provide, amongst other things, limitations on the customers permissible use of the data it obtains from Alesco, such as for that customer's use only, confidentiality provisions, reporting of unauthorized use or access to information, indemnification requirements, and limits on liability.

43.    The Complaint alleges that Atlas brings claims against Alesco "as assignee of the claims of approximately 19,849 individuals." Complaint at ¶ 23.

44.     The Complaint alleges Alesco violated Daniel's Law without advising how Alesco purportedly violated same or providing any example of such alleged violation. *See id.* at ¶ 54 - 55.

45.     Neither Atlas nor the individually named Plaintiffs are customers of Alesco and as such, are not authorized to access Alesco's computer systems, platform, or data.

46.     Atlas's only way to access Alesco data would be by hacking into the system, fraudulent access through the creation of a fake account, and/or unauthorized access through some third party posing as an Alesco customer.

47.     Atlas's unauthorized access to Alesco's computer systems and data was accomplished by improper means and a plan with at least one other unknown actor to fraudulently, purposefully, and knowingly harm Alesco.

48.     Alesco did not consent to or otherwise have knowledge of Atlas's unauthorized access.

49.     Atlas's unauthorized access to Alesco's computer systems and data, including the massive volume of emails (whether blocked by spam filters or partially received or received through the Lists) caused significant damage and harm to Alesco, for example, by creating a 91% duplication rate making processing impossible, diverting significant resources and staff time from legitimate customers to sort through duplicates, necessitating exorbitant resources and time for the manual

review required for thousands of requests, completely overwhelming this small company's systems and resources and consuming substantial employee time on processing the sheer volume, duplication, and impossibility of efficient compliance created by Atlas.

50.    As a direct result of Atlas's actions, Alesco suffered harm including, but not limited to, its computer systems, its email system, its business, and other damages related to same.

## COUNT I
### Violations of Federal Computer Fraud and Abuse Act
### (CFAA) 18 *U.S.C.A.* § 1030

51.    Alesco repeats and realleges Paragraphs 1-50 of its Counterclaims as if fully set forth herein.

52.    Alesco's website, platform, and database are protected computer(s) used in or affecting interstate or foreign commerce or communication pursuant to 18 U.S.C. §1030(e)(2)(B).

53.    Atlas's conduct constituted intentional unauthorized access and/or exceeding of authorized access of a computer in violation of the CFAA because, among other things Atlas's spam attacked Alesco's website, server, and/or database with tens of thousands of emails nearly simultaneously.

54.    Atlas's conduct constituted intentional unauthorized access and/or exceeding of authorized access of a computer in violation of the CFAA because,

among other things Atlas is not customers of Alesco and were not authorized to use, access, or obtain Alesco's computers and data.

55.    Atlas's acted knowingly and with intent to defraud by purposefully accessing a protected computer without authorization and with intent to defraud, and by accessing a protected computer without authorization or in excess of falsely obtained authorization and using such access to obtain or alter information that Atlas's are not entitled to obtain or alter.

56.    Atlas's unauthorized and/or improper exceeding of falsely obtained authorized access to Alesco's computer caused harm and interruption to Alesco's business and otherwise caused damages by the impairment to the integrity or availability of data, a program, a system, or information, costs incurred by Alesco in responding to the offense and/or restoring the system.

57.    Atlas's unauthorized access to Alesco's computer and subsequent improper use of Alesco's data violated Alesco's Terms giving rise to, among other things, an indemnification obligation.

58.    As such, Atlas's actions caused damages and loss suffered by Alesco which, in aggregate exceed $5,000 in value during a one-year period.

59.    As a result, Alesco is entitled to and demands civil remedies for Atlas's violations of the CFFA, including, but not limited to, injunctive relief, compensatory damages, statutory damages, punitive damages, indemnification, attorney's fees and

costs, pre- and post-judgment interest, and all other relief as the Court deems proper and just.

## COUNT II
### Violations of New Jersey Computer Related Offenses Act
### *N.J.S.A.* § 2A:38A-3 ("NJCROA")

60.    Alesco repeats and realleges Paragraphs 1-59 of its Counterclaims as if fully set forth herein.

61.    Atlas's purposely and/or knowingly accessed Alesco's computer, computer system, or network without authorization or in excess of authorization as detailed above, *e.g.*, by way of the massive email spam attack and/or by way of unauthorized access through improper means.

62.    Atlas's purposely and/or knowingly accessed, altered, damaged, took and/or destroyed Alesco data and/or systems without authorization.

63.    Alesco was damaged in business and/or property as a result of the unauthorized access and related misconduct of Atlas.

64.    Atlas acted purposefully and/or knowingly in their unauthorized actions.

65.    Atlas's unauthorized access to Alesco's computer and subsequent improper use of Alesco's data violated Alesco's Master Services Agreement and/or Data Use Terms and Conditions Agreement giving rise to an indemnification obligation.

66.     As a result, Alesco is entitled to and demands civil remedies for Atlas's violations of the NJCROA, including, but not limited to, injunctive relief, compensatory damages, statutory damages, punitive damages, indemnification, attorney's fees and costs, pre and post judgment interest, and all other relief as the Court deems proper and just.

## COUNT III
## Tortious Interference

67.     Alesco repeats and realleges Paragraphs 1-66 of its Counterclaims as if fully set forth herein.

68.     Alesco has a reasonable expectation of economic advantage and valid, protectable interest in protecting its economic relationship with its current customers and prospective customers.

69.     Alesco has business and contractual relationships with its customers.

70.     Atlas knew of Alesco's economic relationships and reasonable expectation of economic advantage with its customers and prospective customers.

71.     Atlas purposely, intentionally, and maliciously interfered with Alesco's economic relationships and reasonable expectation of economic advantage with its customers and prospective customers, without justification, by way of the massive, coordinated spam attack of tens of thousands of emails to Alesco and/or by way of unauthorized access through improper means.

72.    Atlas's actions in this regard inhibited Alesco's ability to service their customers and potential customers, caused massive disruption to services, and among other things, caused Alesco significant business interruptions and losses.

73.    Atlas's actions further caused Alesco to deny services to certain customers, both current and prospective, in an effort to mitigate and prevent further attacks by Atlas.

74.    As a result of Atlas's actions and interference, Alesco has suffered and continues to suffer losses and damages, the full amount of which shall be proven at trial,

75.    As a result, Alesco is entitled to and demands civil remedies for Atlas's Tortious Interference with current and perspective business advantage, including, but not limited to, injunctive relief, compensatory damages, punitive damages, attorney's fees and costs, pre and post judgment interest, and all other relief as the Court deems proper and just.

## COUNT IV
### Civil Conspiracy

76.    Alesco repeats and realleges Paragraphs 1-51 of its Counterclaims as if fully set forth herein.

77.    Atlas and/or one or more entities or individuals jointly, separately, or through someone acting on their behalf jointly, separately, or through someone acting on their behalf, conspired and agreed unlawfully to access Alesco's

computers, platform, and/or data and to take, harm, or otherwise use such unlawfully obtained information.

78. Atlas and/or one or more entities or individuals jointly, separately, or through someone acting on their behalf, took overt steps to effectuate such plan and did in fact unlawfully gain access Alesco's computers, platform, and/or data.

79. Atlas and/or one or more entities or individuals jointly, individually, and/or through someone acting on their behalf, took additional overt steps and gain access to and took data from Alesco's computers, platform, and/or data.

80. The actions of Atlas and/or one or more entities or individuals jointly, individually, and/or through someone acting on their behalf, damaged and was the proximate cause of damage to Alesco.

81. Atlas and/or one or more entities or individuals unauthorized access to Alesco's computer and subsequent improper use of Alesco's data violated Alesco's MSA and/or DUTCA, and the Terms contained therein, giving rise to an indemnification obligation.

82. As a result, Alesco is entitled to and demands judgement against Atlas and its co-conspirator(s) for Civil Conspiracy, including, but not limited to, injunctive relief, compensatory damages, punitive damages, indemnification, attorney's fees and costs, pre and post judgment interest, and all other relief as the Court deems proper and just.

## **Prayer for Relief**

Wherefore, Alesco prays for relief to the extent and as permitted by law, as follows:

     A.     For judgment against Atlas, and its co-conspirator(s), and in favor of Alesco, on each of Alesco's Counterclaims I – IV;

     B.     Statutory damages;

     C.     Injunctive relief;

     D.     Compensatory damages;

     E.     Actual damages;

     F.     Punitive Damages;

     G.     Indemnification;

     H.     Attorney's fees and costs;

     I.     Pre- and Post-Judgement interest; and

     J.     Such other relief as the Court deems proper and just.

## **DEMAND FOR JURY TRIAL**

Alesco hereby demands a trial by jury on all issues as provided by *Fed. R. Civ. P.* 38(b) and *L. Civ. R.* 38.1.

DATED: October  2, 2025                              Respectfully submitted,

                                                  **GREENSPOON MARDER LLP**
                                                  *Attorneys for Defendant*
                                                  *The Alesco Group, L.L.C.*


                                                  */s/ Kelly M. Purcaro*
                                                  Kelly M. Purcaro, Esq.


## **CERTIFICATE OF SERVICE**

I hereby certify that on October 2, 2025, I filed a true and correct copy of the foregoing with the court and a copy will be served upon all parties of record via CM/ECF.

                                                  */s/ Kelly M. Purcaro*
                                                  Kelly M. Purcaro, Esq.